UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

HANJIN SHIPPING CO. LTD.,

                               10 Civ. 3954 (AKH)

          Petitioner,

   -against-                         VERIFIED PETITION

GLORY WEALTH SHIPPING PTE LTD.,

          Respondent.
----------------------------------------------------X

      PLEASE TAKE NOTICE that Petitioner HANJIN SHIPPING CO. LTD.

("HANJIN"), by its attorneys MAHONEY & KEANE LLP., seeks confirmation of

Arbitration Awards against Respondent, GLORY WEALTH SHIPPING PTE LTD.

("GLORY WEALTH"), and entry of judgment in conformity with the Arbitration

Awards.

      1.     This is a case of admiralty and maritime jurisdiction within the meaning of Rule

9(h) of the Federal Rules of Civil Procedure.

      2.     This Court's jurisdiction over this matter is based upon the Federal Arbitration

Act, 9 U.S.C. §1 et seq., 28 U.S.C. §1333 (admiralty), 28 U.S.C. §1332 (diversity), 28

U.S.C. § 1331(federal question), as well as the Court's pendent, supplementary and ancillary

jurisdiction.

      3.     The District Court for the Southern District of New York is the proper venue for

this matter, pursuant to 9 USC §203.

      4.     Petitioner, HANJIN, is a foreign entity engaged in the business of maritime

shipping.

5.       Respondent GLORY WEALTH is a foreign entity in the business of maritime shipping .

6.       Respondent GLORY WEALTH is registered with the New York Department of State, as an active foreign entity presently conducting business within the State of New York.

<u>M.V. BEIJING</u>

7.       On or about April 23, 2008, Petitioner, as disponent owner, and Respondent, as charterer, entered a charter agreement for the use of the MV BEIJING (Beijing C.A.).

8.       Pursuant to the terms of the Beijing C.A., all disputes would be referred to London arbitration.

9.       Respondents breached the terms of Beijing C.A. by, *inter alia*, failing to pay full hire and early wrongful termination under the terms of Beijing C.A.

10.       Pursuant to the terms of the Beijing C.A., Petitioner commenced arbitration in London, with reference to Petitioner's claims against Respondent under the Beijing C.A.

11.       Mr. Michael Baker-Harber was appointed as sole arbitrator in this matter.

12.       On the 18th day of May, 2009, Mr. Baker-Harber issued an Arbitral Award (Beijing Award) in favor of Petitioner in the amount of <u>US$4,689,869.65</u>, together with interest on said sum calculated at the rate of 5.25 percent, per annum, compounded with three monthly rests, running from Feb. 20, 2009 until the date payment is made.  (A true copy of the Arbitral Award is attached herein as <u>Exhibit 1</u>).

13.       The Beijing Award further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4 percent per annum compounded

with three monthly rests running from the date of the award until payment.  Costs are to be determined by the arbitrator.

14.    The Beijing Award further mandated that Respondent reimburse Petitioner for the arbitrator's  costs, together with interest thereon calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

## M.V. MENDOCINO

15.    On or about July 24, 2008, Petitioner, as disponent owner, and Respondent, as charterer, entered a charter agreement for the use of the MV MENDOCINO (Mendocino C.A.).

16.    Pursuant to the terms of the Mendocino C.A., all disputes would be referred to London arbitration.

17.    Respondents breached the terms of the Mendocino C.A. by, *inter alia*, failing to pay full hire and early wrongful termination under the terms of the Mendocino C.A.

18.    Pursuant to the terms of the Mendocino C.A., Petitioner commenced arbitration in London, with reference to Petitioner's claims against Respondent under the Mendocino C.A.

19.    Mr. Michael Baker-Harber was appointed as sole arbitrator in this matter.

20.    On the 18th day of May, 2009, Mr. Baker-Harber issued a First Final Arbitral Award  (Mendocino Award No. 1) in favor of Petitioner in the amount of US$3,945,934.12, together with interest on said sum calculated at the rate of 5.25 percent, per annum, compounded with three monthly rests, running from March 2, 2009

until the date payment is made.  (A true copy of the First Final Arbitral Award is attached herein as Exhibit 2).

21.    Mendocino Award No. 1 further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of the award until payment. Costs are to be determined by the arbitrator.

22.    Mendocino Award No. 1 further mandated that Respondent reimburse Petitioner for the arbitrator's  costs, together with interest thereon calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

23.    Mr. Baker-Harber reserved jurisdiction over the matter for the purpose of dealing with outstanding matters in the proceeding, including possible additional damages that may accrue in favor of Petitioner.

24.    On the 30th day of October, 2009, Mr. Baker-Harber issued a Second Final Arbitral Award (Mendocino Award No. 2), supplementing its May 18, 2009 Award, and finding in favor of Petitioner in the amount of US$2,777,742.89, together with interest on the said sum calculated at a rate of 5 percent per annum, compounded with three monthly rests, running from March 4, 2009 until the date payment is made. (A true copy of the Second Final Arbitral Award is attached herein as Exhibit 2).

25.    Mendocino Award No. 2 further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of the award until payment. Costs are to be determined by the arbitrator.

26.     Mendocino Award No. 2 further mandated that Respondent reimburse Petitioner for the arbitrator's  costs, together with interest thereon calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

M.V. DELMAR

27.     On or about September 7, 2007, Petitioner, as disponent owner, and Respondent, as charterer, entered a charter agreement for the use of the MV DELMAR (Delmar C.A.).

28.     Pursuant to the terms of Delmar C.A., all disputes would be referred to London arbitration.

29.     Respondents breached the terms of the Delmar C.A. 3 by, *inter alia*, failing to pay full hire and early wrongful termination under the terms of the Delmar C.A..

30.     Pursuant to the terms of the Delmar C.A., Petitioner commenced arbitration in London, with reference to Petitioner's claims against Respondent under the Delmar C.A..

31.     Mr. Michael Baker-Harber was appointed as sole arbitrator in this matter.

32.     On the 18th day of May, 2009, Mr. Baker-Harber issued a First Final Arbitral Award (Delmar Award No. 1) in favor of Petitioner in the amount of US$3,517,803.16, together with interest on said sum calculated at the rate of 5.25 percent, per annum, compounded with three monthly rests, running from February 27, 2009 until the date payment is made.  (A true copy of the First Final Arbitral Award is attached herein as Exhibit 3).

33.     Delmar Award No. 1 further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4 percent per annum

compounded with three monthly rests running from the date of the award until payment. Costs are to be determined by the arbitrator.

34.     Delmar Award No. 1 further mandated that Respondent reimburse Petitioner for the arbitrator's costs, together with interest thereon calculated at a rate of 4 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

35.     Mr. Baker-Harber reserved jurisdiction over the matter for the purpose of dealing with outstanding matters in the proceeding, including possible additional damages that may accrue in favor of Petitioner.

36.     On the 10th day of March, 2010, Mr. Baker-Harber issued a Second Final Arbitral Award (Delmar Award No. 2), supplementing its May 18, 2009 Award, and finding in favor of Petitioner in the amount of US$7,614,806.34, together with interest on the said sum calculated at a rate of 5.5 percent per annum, compounded with three monthly rests, running from July 1, 2009 until the date payment is made. (A true copy of the Second Final Arbitral Award is attached herein as Exhibit 2).

37.     Delmar Award No. 2 further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4.5 percent per annum compounded with three monthly rests running from the date of the award until payment. Costs are to be determined by the arbitrator.

38.     Delmar Award No. 2 further mandated that Respondent reimburse Petitioner for the arbitrator's costs, together with interest thereon calculated at a rate of 4.5 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

<u>M.V. TIAN ZHU FENG</u>

39.    On or about September 6th, 2007, Petitioner, as disponent owner, and Respondent, as charterer, entered a charter agreement for the use of the MV TIAN ZHU FENG (Tian Zhu Feng C.A.).

40.    Pursuant to the terms of the Tian Zhu Feng C.A., all disputes would be referred to London arbitration.

41.    Respondents breached the terms of the Tian Zhu Feng C.A. by, *inter alia*, failing to pay full freight, hire, costs, etc., as required by the terms of Tian Zhu Feng C.A.

42.    Pursuant to the terms of Tian Zhu Feng C.A., Petitioner commenced arbitration in London, with reference to Petitioner's claims against Respondent under Tian Zhu Feng C.A.

43.    Mr. Michael Baker-Harber was appointed as sole arbitrator in this matter.

44.    On the 12th day of March, 2010, Mr. Baker-Harber issued an Arbitral Award (Tian Zhu Feng Award) in favor of Petitioner in the amount of <u>US$15,673.01</u>, together with interest on said sum calculated at the rate of 5.25 percent, per annum, compounded with three monthly rests, running from March 26, 2009 until the date payment is made. (A true copy of the Arbitral Award is attached herein as <u>Exhibit 4</u>).

45.    The Tian Zhu Feng Award further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4.5 percent per annum compounded with three monthly rests running from the date of the award until payment.  Costs are to be determined by the arbitrator.

46.    The Tian Zhu Feng Award further mandated that Respondent reimburse Petitioner for the arbitrator's  costs, together with interest thereon calculated at a rate of

4.5 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

## M.V. ISMINAKI

47.    On or about April 26, 2007, Petitioner, as disponent owner, and Respondent, as charterer, entered a charter agreement for the use of the MV ISMINAKI (Isminaki C.A.).

48.    Pursuant to the terms of the Isminaki C.A., all disputes would be referred to London arbitration.

49.    Respondents breached the terms of the Isminaki C.A. by, *inter alia*, failing to pay full freight, hire, costs, etc., as required by the terms of the Isminaki C.A.

50.    Pursuant to the terms of the Isminaki C.A., Petitioner commenced arbitration in London, with reference to Petitioner's claims against Respondent under Isminaki C.A.

51.    Mr. Michael Baker-Harber was appointed as sole arbitrator in this matter.

52.    On the 12th day of March, 2010, Mr. Baker-Harber issued an Arbitral Award (Isminaki Award) in favor of Petitioner in the amount of US$60,120.61, together with interest on said sum calculated at the rate of 5.25 percent, per annum, compounded with three monthly rests, running from March 26, 2009 until the date payment is made.  (A true copy of the Arbitral Award is attached herein as Exhibit 5).

53.    The Isminaki Award further mandated that Respondent reimburse Petitioner for costs, as well as interest thereon, calculated at a rate of 4.5 percent per annum compounded with three monthly rests running from the date of the award until payment. Costs are to be determined by the arbitrator.

The Isminaki Award further mandated that Respondent reimburse Petitioner for the arbitrator's costs, together with interest thereon calculated at a rate of 4.5 percent per annum compounded with three monthly rests running from the date of payment until the date of reimbursement.

54.    Petitioner HANJIN submits the foregoing Petition, seeking an Order from this Honorable Court recognizing, confirming and enforcing the referenced Arbitral Awards. (See Exhibits 1 - 5).

55.    To date, Respondent GLORY WEALTH has not complied with the Arbitration Awards and has failed to pay the sum awarded to Petitioner HANJIN.

56.    Respondent has not sought to vacate, modify, or challenge the Arbitration Awards.

57.    Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., Petitioner is entitled to confirmation of the Arbitration Award, entry and enforcement of a Judgment in conformity with the award, including the award of interest, costs and fees.

WHEREFORE, Petitioner, HANJIN SHIPPING CO. LTD., seeks an order:

(i)        Confirming the arbitration awards against Respondent GLORY

WEALTH SHIPPING PTE LTD;

(ii)       Entering judgments in favor of Petitioner in accordance with the

attached Arbitration Awards;

(iii)      Awarding Petitioner interest, costs, attorneys' fees, etc; and

(iv)      Providing Petitioner with such other and further relief as the Court

deems proper.

Dated:        New York, New York
              May 12, 2010

                                    Respectfully submitted,

                                    MAHONEY & KEANE LLP
                                    Attorneys for Petitioner HANJIN
                                    SHIPPING CO. LTD.,

                    By:    _____
                                    Jorge A. Rodriguez
                                    11 Hanover Square, 10th Floor
                                    New York, New York 10005
                                    Tel (212) 385-1422
                                    Fax (212) 385-1605
                                    File No. 12/3890

## ATTORNEY VERIFICATION

STATE OF NEW YORK        :

                               : SS.:

COUNTY OF NEW YORK    :

1.       My name is JORGE A. RODRIGUEZ.

2.       I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3.       I am the attorney for Petitioner, HANJIN SHIPPING CO. LTD., and I am fully authorized to make this Verification on its behalf.

4.       I have read the foregoing Petition and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5.       The reason that this Verification was made by me and not the Petitioner is that the Petitioner is a corporation none of whose officers are present in this District.

6.       The source of my knowledge is information and records furnished to me by the Petitioner and its counsel, all of which I believe to be true and accurate.

Dated:       New York, New York
                May 12, 2010

                                        Jorge A. Rodriguez

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 12ᵗʰ DAY OF May, 2010,

BY Jorge A. Rodriguez

NOTARY PUBLIC

GARTH S. WOLFSON
NOTARY PUBLIC
State of New York No. 02WO5076944
Qualified in New York County
Term Expires 4/28/2011

*Exhibit "1"*

IN THE MATTER OF THE ARBITRATION ACT 1996

AND IN THE MATTER OF AN ARBITRATION

B E T W E E N :-

Hanjin Shipping Co Ltd

**Claimants**
**(Owners)**

-and-

Glory Wealth Shipping Pte Ltd

**Respondents**
**(Charterers)**

**m.v. Beijing 2008**

**Charterparty 23rd April 2008**

---

**FIRST FINAL AWARD**

---

WHEREAS :-

1.    By a charterparty dated 23rd April 2008 on an amended NYPE 1946 form the Claimants, as disponent owners ("Owners") chartered the motor vessel Delmar to the Respondents ("Charterers) from the time of delivery for a period of minimum/maximum 30th October/30th December 2009 on terms more particularly set out therein.

2.   The said charterparty further provided, by Clauses 17 and 30 for any disputes to be referred to arbitration in London, in the manner therein specified, with English law to apply.  Disputes having arisen, further details of which appear in paragraph 3 below, Owners appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT as arbitrator and duly called upon Charterers to appoint an arbitrator. They failed to do so and having duly given Charterers a further opportunity to do so, in accordance with Section 17 of The Arbitration Act 1996, Owners appointed me as sole arbitrator.  I accepted my appointment on the current terms of the London Maritime Arbitrators Association and accordingly they apply to this reference.  Any Award made by me is final and binding on the parties as if I had been appointed sole arbitrator by agreement.  The seat of this arbitration is England.

3.   Owners sought an interim award for US$4,689,869.65 in respect of outstanding hire they said was due to them plus interest and costs.  They also sought damages resulting from the alleged early wrongful termination of the charterparty but did not seek an award in respect of those damages at this juncture.

4.   Owners served claim submissions dated 6th March 2009 on Charterers, claiming outstanding hire, as above.  Charterers did not serve any submissions by way of defence and on 24th March I made the following order:-

> "*I now order service of defence submissions (with full supporting documents please) by close of business London time 3rd April, being 28 days from service of claim submissions.*
>
> *In the event of non-compliance a peremptory order will follow with a very short time limit.*"

5.   Nothing was heard from Charterers and on 6th April I made the following order:-

*"I refer to my order dated 24th March and Holman Fenwick Willan's message of today. You have failed to comply with that order and unless you seek to persuade me otherwise by close of business London time tomorrow this message shall stand as my peremptory order that you do serve defence submissions by noon London time 14th failing which I shall feel free to proceed to my award on the basis of materials placed before me by the Claimants to the exclusion of all else in accordance with section 41/7 of the Arbitration Act 1996 applicable to this reference."*

6.    Again nothing was heard from the Charterers. I am satisfied that the Claim Submissions and my orders dated 24th March and 6th April were received by Charterers and that they have been given a reasonable opportunity to respond. They have either failed or chosen not to respond.

7.    Owners' statement of account dated 23rd April 2008 shows that after deduction of the damages claim referred to in paragraph 3 above, there is a sum due to Owners of US$4,689,869.65 after taking account of sums due to Owners pursuant to the terms of the charterparty and payments made by Charterers.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my FIRST FINAL AWARD namely:-

B    I FIND AND HOLD that there is a sum of US$4,689,869.65 due to Owners from Charterers.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the said sum of US$4,689,869.65 together with interest on the said sum calculated at the

rate of 5.25 per cent per annum, compounded with three monthly rests, running from 20th February 2009 until the date payment is made.

D    I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment. Additionally the Charterers shall pay my costs of £1000 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    My Award is FINAL as to all matters herein determined but I hereby RESERVE jurisdiction to deal with all outstanding matters in the reference, including, without prejudice to the above, the Owners' claim for damages.

Given under my hand this 18th day of May 2009

Michael Baker-Harber                              Witness

*Exhibit "2"*

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

Hanjin Shipping Co Ltd

<u>Claimants</u>
<u>(Owners)</u>

-and-

Glory Wealth Shipping Pte Ltd

<u>Respondents</u>
<u>(Charterers)</u>

<u>m.v. Mendocino</u>

<u>Charterparty 24th July 2008</u>

---

**FIRST FINAL AWARD**

---

WHEREAS :-

1. By a charterparty dated 24th July 2008 on an amended NYPE 1946 form the Claimants, as disponent owners ("Owners") chartered the motor vessel Delmar to the Respondents ("Charterers) for a minimum 8 months/maximum 10 months on terms more particularly set out therein.

2.    The said charterparty further provided, by Clauses 17 and 30 for any disputes to be referred to arbitration in London, in the manner therein specified, with English law to apply.  Disputes having arisen, further details of which appear in paragraph 3 below, Owners appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT as arbitrator and duly called upon Charterers to appoint an arbitrator. They failed to do so and having duly given Charterers a further opportunity to do so, in accordance with Section 17 of The Arbitration Act 1996, Owners appointed me as sole arbitrator.  I accepted my appointment on the current terms of the London Maritime Arbitrators Association and accordingly they apply to this reference.  Any Award made by me is final and binding on the parties as if I had been appointed sole arbitrator by agreement.  The seat of this arbitration is England.

3.    Owners sought an interim award for US$3,945,934.12 in respect of outstanding hire they said was due to them plus interest and costs.  They also sought damages resulting from the alleged early wrongful termination of the charterparty but did not seek an award in respect of those damages at this juncture.

4.    Owners served claim submissions dated 6th March 2009 on Charterers, claiming outstanding hire, as above.  Charterers did not serve any submissions by way of defence and on 24th March I made the following order:-

> *"I now order service of defence submissions (with full supporting documents please) by close of business London time 3rd April, being 28 days from service of claim submissions.*
>
> *In the event of non-compliance a peremptory order will follow with a <u>very</u> short time limit."*

5.    Nothing was heard from Charterers and on 6th April I made the following order:-

*"I refer to my order dated 24th March and Holman Fenwick Willan's message of today. You have failed to comply with that order and unless you seek to persuade me otherwise by close of business London time tomorrow this message shall stand as my peremptory order that you do serve defence submissions by noon London time 14th failing which I shall feel free to proceed to my award on the basis of materials placed before me by the Claimants to the exclusion of all else in accordance with section 41/7 of the Arbitration Act 1996 applicable to this reference."*

6.    Again nothing was heard from the Charterers. I am satisfied that the Claim Submissions and my orders dated 24th March and 6th April were received by Charterers and that they have been given a reasonable opportunity to respond. They have either failed or chosen not to respond.

7.    Owners' statement of account dated 2nd March 2009 shows that after deduction of the damages claim referred to in paragraph 3 above, there is a sum due to Owners of US$3,945,934.12 after taking account of sums due to Owners pursuant to the terms of the charterparty and payments made by Charterers.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my FIRST FINAL AWARD namely:-

B    I FIND AND HOLD that there is a sum of US$3,945,934.12 due to Owners from Charterers.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the said sum of US$3,945,934.12 together with interest on the said sum calculated at the

rate of 5.25 per cent per annum, compounded with three monthly rests, running from 2nd March 2009 until the date payment is made.

D     I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment.  Additionally the Charterers shall pay my costs of £1000 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E     My Award is FINAL as to all matters herein determined but I hereby RESERVE jurisdiction to deal with all outstanding matters in the reference, including, without prejudice to the above, the Owners' claim for damages.

Given under my hand this   18th day of May 2009

—————————————————
      Michael Baker-Harber

—————————————————
                    Witness



# CHEESWRIGHTS
### NOTARIES PUBLIC

N P Ready
R M Campbell
J B Burgess
E Gardiner
A J Claudet
I A Rogers

A Grafton
L N Hyde-Vaamonde

TO ALL TO WHOM THESE PRESENTS SHALL COME, I **EDWARD GARDINER** of the City of London, England **NOTARY PUBLIC** by royal authority duly admitted, sworn and holding a faculty to practise throughout England and Wales, DO HEREBY CERTIFY the genuineness of the signature subscribed to the document hereunto annexed, such signature being in the own, true and proper handwriting of **MICHAEL JAMES BAKER-HARBER**, the sole arbitrator therein named and described.

IN FAITH AND TESTIMONY WHEREOF I the said notary have subscribed my name and set and affixed my seal of office in London, England this third day of November in the year two thousand and nine.

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

**Hanjin Shipping Co Ltd**

<u>Claimants</u>
<u>(Owners)</u>

-and-

**Glory Wealth Shipping Pte Ltd**

<u>Respondents</u>
<u>(Charterers)</u>

<u>m.v. Mendocino</u>

<u>Charterparty 24th July 2008</u>

---

**SECOND FINAL AWARD**

---

WHEREAS :-

1. By a charterparty dated 24th July 2008 on an amended NYPE 1946 form the Claimants, as disponent owners ("Owners") chartered the motor vessel Mendocino to the Respondents ("Charterers) for a minimum 8 months/maximum 10 months on terms more particularly set out therein.

2.    The said charterparty further provided, by Clauses 17 and 30 for any disputes to be referred to arbitration in London, in the manner therein specified, with English law to apply.  Disputes having arisen, further details of which appear in paragraph 3 below, Owners appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT as arbitrator and duly called upon Charterers to appoint an arbitrator. They failed to do so and having duly given Charterers a further opportunity to do so, in accordance with Section 17 of The Arbitration Act 1996, Owners appointed me as sole arbitrator.  I accepted my appointment on the current terms of the London Maritime Arbitrators Association and accordingly they apply to this reference.  Any Award made by me is final and binding on the parties as if I had been appointed sole arbitrator by agreement.  The seat of this arbitration is England.

3.    Owners sought an interim award for US$3,945,934.12 in respect of outstanding hire they said was due to them plus interest and costs.  They also sought damages resulting from the alleged early wrongful termination of the charterparty but did not seek an award in respect of those damages at this juncture.

4.    Owners served claim submissions dated 6th March 2009 on Charterers, claiming outstanding hire, as above.  Charterers did not serve any submissions by way of defence and on 24th March I made the following order:-

> "I now order service of defence submissions (with full supporting documents please) by close of business London time 3rd April, being 28 days from service of claim submissions.
>
> In the event of non-compliance a peremptory order will follow with a _very_ short time limit."

5.    Nothing was heard from Charterers and on 6th April I made the following order:-

> "*I refer to my order dated 24th March and Holman Fenwick Willan's message of today. You have failed to comply with that order and unless you seek to persuade me otherwise by close of business London time tomorrow this message shall stand as my peremptory order that you do serve defence submissions by noon London time 14th failing which I shall feel free to proceed to my award on the basis of materials placed before me by the Claimants to the exclusion of all else in accordance with section 41/7 of the Arbitration Act 1996 applicable to this reference.*"

6.    Again nothing was heard from the Charterers.  I was satisfied that the Claim Submissions and my orders dated 24th March and 6th April were received by Charterers and that they had been given a reasonable opportunity to respond.  They had either failed or chosen not to respond.

7.    Owners' statement of account dated 2nd March 2009 showed that after deduction of the damages claim referred to in paragraph 3 above, there was a sum due to Owners of US$3,945,934.12 after taking account of sums due to Owners pursuant to the terms of the charterparty and payments made by Charterers.

8.    By my First Final Award dated 18th May 2009 I found that there was a sum of US$3,945,934.12 due to Owners from Charterers however I reserved jurisdiction to deal with all outstanding matters in the reference including Owners' claim for damages.

9.    Owners served claim submissions in respect of those damages dated 14th August 2009 seeking a total of US$2,777,742.89 plus interest and costs.

10.    Charterers did not respond and on 16th September 2009 I made the following order:-

> "*You will have seen the Claimants' application earlier today requesting an order for service of defence submissions.  They are indeed overdue and unless you seek to persuade me otherwise (by close of business London time this Friday please)*

*this message shall stand as the tribunal's order that defence submissions should be served by close of business London time 25th September.*

*Failure to comply will likely lead to a final and peremptory order with a short time limit."*

11.    Again Charterers did not respond and on 30th September 2009 I made the following order:-

*"I was disappointed to note that you failed to comply with my order dated 16th September.*

*I now order in **final and peremptory terms** service of your defence submissions by close of business London time 7th October. In the event you fail to comply I shall feel free to proceed to my Award in accordance with Section 41/7 of the Arbitration Act 1996 on the basis of the materials and submissions placed before me by the Claimants **to the exclusion of all else**. I urge you to comply with this order."*

12.    Again Charterers failed to respond. Accordingly I have determined that it is appropriate that I should proceed to my Award in accordance with Section 41(7) of the Arbitration Act 1996 which applies to this reference on the basis of the materials placed before me by Owners. The Reasons for my Award are attached hereto and form part of it.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my SECOND FINAL AWARD namely:-

B    I FIND AND HOLD that there is a sum of US$2,775,604.36 due to Owners from Charterers.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the said sum of US$2,775,604.36 (Two Million Seven Hundred and Seventy-Five Thousand Six Hundred and Four United States Dollars and eighty-nine cents) together with interest on the said sum calculated at the rate of 5 per cent per annum, compounded with three monthly rests, running from 4th March 2009 until the date payment is made.

D    I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment. Additionally the Charterers shall pay my costs of £1500 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    My Award is FINAL as to all matters herein determined but I hereby RESERVE jurisdiction to deal with all outstanding matters in the reference.

Given under my hand this 30th day of October 2009

Michael Baker-Harber                              Witness

## m.v. Mendocino

### c/p 24.07.08

Reasons attached to and forming part of Second Final Award dated 30th October 2009.

1.      The vessel was chartered for a minimum period of 8 months from delivery. She was delivered into Charterers' service at 1115 GMT on 25th July 2008. The earliest date therefore that Charterers could effect contractual redelivery was 1115 GMT 25th March 2009. However by notice dated 9th February Charterers purported to redeliver the vessel the following day off Cape Passero. Owners accepted this clear breach of charter as a repudiatory breach thereby terminating the contract. They now claim damages for this breach.

2.      I pause here to record that, in my view, there was indeed a clear breach by Charterers and that Owners are accordingly entitled in principle to claim damages. The only question for me therefore was to establish quantum.

3.      Based on the time charter and date of delivery and wrongful redelivery. Owners said, and I agree, that the vessel was redelivered 43.36458 days prematurely.

4.      Fortunately Owners were able to mitigate their losses by fixing the vessel to Cargill International SA with delivery retrospectively at Cape Passero for a time charter trip:-

*"ONE TCT VIA USG OR ECSA OR NCSA IN CHOPT TO SKAW/PASSERO RANGE, VIA SAS SBS SPS, AA (EXCEPT WHERE CUSTOMARY), WITH GRAINS AND/OR GRAIN PRODUCTS AND/OR BULK HARMLESS COAL AND/OR IRON ORE ONLY INTENDED DURATION ABOUT 50-55 DAYS*

*WITHOUT GUARANTEE CHTRS TO DECLARE L/PORT RANGE (USG OR ECSA OR NCSA) LATEST PASSING GIB."*

The daily charter rate was US12,500.

5.     There was no suggestion that this was not a reasonable fixture for Owners to have made to minimise their losses.

5.     Accordingly Owners calculated their loss as follows:-

(a) Loss of hire US$76,037.50 (being the daily rate under the original charter less 3.75% commission) x 43.36458 days equals US$3,297,334.25.

Less (b) Hire earned US$12,031.25 (being the Cargill daily rate less 3.75% commission) x 43.36458 days equals US$521,730.10.

Total net loss of hire - US$2,775,604.36.

Plus (c) Loss C/V/E payable under the original charter (US$1500 per month) equals US$2,138.53.

Total claim – US$2,777,742.89.

7.     In my view in principle the formulation of the claim was sound (see <u>The Elena D'Amico</u> [1980] 1 Lloyd's Rep 75) and the calculation as a calculation is correct.  However both original and replacement charters provided for payment of US$1500 per month for C/V/E and I have disallowed this element of the claim.  I have awarded Owners interest from a mid-point between the repudiation on 10th February and the contractual redelivery date of 25th March, plus their costs.

*Exhibit "3"*

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

**Hanjin Shipping Co Ltd**

<u>Claimants</u>
<u>(Owners)</u>

-and-

**Glory Wealth Shipping Pte Ltd**

<u>Respondents</u>
<u>(Charterers)</u>

<u>m.v. Delmar</u>

<u>Charterparty 7th September 2007</u>

---

**FIRST FINAL AWARD**

---

WHEREAS :-

1.   By a charterparty dated 7th September 2007 on an amended NYPE 1946 form the Claimants, as disponent owners ("Owners") chartered the motor vessel Delmar to the Respondents ("Charterers) for a minimum 23 months/maximum 25 months on terms more particularly set out therein.

2.    The said charterparty further provided, by Clauses 17 and 30 for any disputes to be referred to arbitration in London, in the manner therein specified, with English law to apply.  Disputes having arisen, further details of which appear in paragraph 3 below, Owners appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT as arbitrator and duly called upon Charterers to appoint an arbitrator. They failed to do so and having duly given Charterers a further opportunity to do so, in accordance with Section 17 of The Arbitration Act 1996, Owners appointed me as sole arbitrator.  I accepted my appointment on the current terms of the London Maritime Arbitrators Association and accordingly they apply to this reference.  Any Award made by me is final and binding on the parties as if I had been appointed sole arbitrator by agreement.  The seat of this arbitration is England.

3.    Owners sought an interim award for US$3,517,803.16 in respect of outstanding hire they said was due to them plus interest and costs.  They also sought damages resulting from the alleged early wrongful termination of the charterparty but did not seek an award in respect of those damages at this juncture.

4.    Owners served claim submissions dated 6th March 2009 on Charterers, claiming outstanding hire, as above.  Charterers did not serve any submissions by way of defence and on 24th March I made the following order:-

> "*I now order service of defence submissions (with full supporting documents please) by close of business London time 3rd April, being 28 days from service of claim submissions.*
>
> *In the event of non-compliance a peremptory order will follow with a <u>very</u> short time limit.*"

5.    Nothing was heard from Charterers and on 6th April I made the following order:-

*"I refer to my order dated 24th March and Holman Fenwick Willan's message of today. You have failed to comply with that order and unless you seek to persuade me otherwise by close of business London time tomorrow this message shall stand as my peremptory order that you do serve defence submissions by noon London time 14th failing which I shall feel free to proceed to my award on the basis of materials placed before me by the Claimants to the exclusion of all else in accordance with section 41/7 of the Arbitration Act 1996 applicable to this reference."*

6.    Again nothing was heard from the Charterers.  I am satisfied that the Claim Submissions and my orders dated 24th March and 6th April were received by Charterers and that they have been given a reasonable opportunity to respond.  They have either failed or chosen not to respond.

7.    Owners' statement of account dated 27th February 2009 shows that after deduction of the damages claim referred to in paragraph 3 above, there is a sum due to Owners of US$3,517,803.16 after taking account of sums due to Owners pursuant to the terms of the charterparty and payments made by Charterers.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my FIRST FINAL AWARD namely:-

B    I FIND AND HOLD that there is a sum of US$3,517,803.16 due to Owners from Charterers.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the said sum of US$3,517,803.16 together with interest on the said sum calculated at the

rate of 5.25 per cent per annum, compounded with three monthly rests, running from 27th February 2009 until the date payment is made.

D    I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4 per cent per annum compounded with three monthly rests running from the date of this Award until payment. Additionally the Charterers shall pay my costs of £1000 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    My Award is FINAL as to all matters herein determined but I hereby RESERVE jurisdiction to deal with all outstanding matters in the reference, including, without prejudice to the above, the Owners' claim for damages.

Given under my hand this 18th day of May 2009

_____                    _____
Michael Baker-Harber                              Witness

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

**Hanjin Shipping Co Ltd**

<u>**Claimants**</u>
<u>**(Owners)**</u>

-and-

**Glory Wealth Shipping Pte Ltd**

<u>**Respondents**</u>
<u>**(Charterers)**</u>

<u>**m.v. Delmar**</u>

<u>**Charterparty 7th September 2007**</u>

---

**SECOND FINAL AWARD**

---

WHEREAS :-

1.  By a charterparty dated 7th September 2007 on an amended NYPE 1946 form the Claimants, as disponent owners ("Owners") chartered the motor vessel Delmar to the Respondents ("Charterers") for a minimum 23 months/maximum 25 months on terms more particularly set out therein.

2.    The said charterparty further provided, by Clauses 17 and 30 for any disputes to be referred to arbitration in London, in the manner therein specified, with English law to apply. Disputes having arisen, further details of which appear in paragraph 3 below and in the Reasons attached to and forming part of this Final Award, Owners appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT as arbitrator and duly called upon Charterers to appoint an arbitrator. They failed to do so and having duly given Charterers a further opportunity to do so, in accordance with Section 17 of The Arbitration Act 1996, Owners appointed me as sole arbitrator. I accepted my appointment on the current terms of the London Maritime Arbitrators Association and accordingly they apply to this reference. Any Award made by me is final and binding on the parties as if I had been appointed sole arbitrator by agreement. The seat of this arbitration is England.

3.    Owners sought an interim award for US$3,517,803.16 in respect of outstanding hire they said was due to them plus interest and costs. They also sought damages resulting from the alleged early wrongful termination of the charterparty but did not seek an award in respect of those damages at that juncture.

4.    By my First Final Award dated 18th May 2009 I ordered Charterers to pay Owners outstanding hire in the sum of US$3,517,803.16 together with interest and costs. By paragraph E of that Award I reserved jurisdiction to deal with all outstanding matters in the reference including the Owners' claim for damages.

5.    Owners now seek damages in the sum of US$7,614,806.34 in respect of the alleged repudiatory breach of the charterparty resulting in the early redelivery of the vessel under the terms of the charterparty. Claim submissions dated 11th November 2009 were duly served upon Charterers. In accordance with the current London Maritime Arbitrators Association Terms which apply to this reference the Charterers should have served defence submissions within 28 days. They failed to do so.

6.    At the request of Owners' London solicitors Holman Fenwick Willan, on 14th December 2009 I made the following order:-

> "*I refer to Holman Fenwick Willan's letter of 11th November and their email of 11th December. Unless you wish to persuade me that there are good reasons why I should not make an order (by close of business London time 15th December please) this message shall stand as my order that you do serve defence submissions (with full supporting documentation please) by close of business London time 21st December. In the event you fail to comply a final and peremptory order is likely to follow with a very short time limit and draconian penalty.*"

7.    Again Charterers failed to respond and on 23rd December I made the following order:-

> "*I was disappointed to note that you have failed to comply with my order dated 14th December.*
>
> *I now order* **in final and peremptory terms** *service of defence submissions (with full supporting documentation please) by close of business London time 4th January. In the event you fail to meet this deadline I shall feel free to proceed to my Award in accordance with Section 41(7) of the Arbitration Act 1996 on the basis of the materials and submissions placed before me by the Claimants* **to the exclusion of all else.** "

8.    Nothing has been heard from Charterers. I am satisfied that they safely received the claim submissions and the two orders made by me. Accordingly it is in my view appropriate that I should proceed to my Final Award on the basis of materials placed

before me by the Owners, pursuant to the said Section 41(7) of the Arbitration Act 1996. The Reasons for my Award are attached hereto and form part of it.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my SECOND FINAL AWARD namely:-

B    I FIND AND HOLD that Owners' claim SUCCEEDS in the sum of US$7,614,806.34.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the said sum of US$7,614,806.34 (Seven Million Six Hundred and Fourteen Thousand Eight Hundred and Six United States Dollars and thirty-four cents) together with interest on the said sum calculated at the rate of 5.5 per cent per annum, compounded with three monthly rests, running from 1st July 2009 until the date payment is made.

D    I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' costs (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4.5 per cent per annum compounded with three monthly rests running from the date of this Award until payment. Additionally the Charterers shall pay my costs of £3,650 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    My Award is FINAL as to all matters herein determined but I hereby RESERVE jurisdiction to deal with all outstanding matters in the reference.

Given under my hand this 10th day of March 2010

_____          _____
Michael Baker-Harber                              Witness

**m.v. Delmar**

**C/P 07.09.07**

Reasons attached to and forming part of Second Final Award dated 10th March 2010.

1.  The vessel was chartered by Owners to Charterers for a minimum 23 months/maximum 25 months.  The vessel was duly delivered into Charterers' service on 30th December 2007, so that the earliest possible date that Charterers could contractually redeliver the vessel was 30th November 2009.  In the event Charterers failed to pay hire in full after the 22nd instalment fell due and failed to pay altogether after making a series of partial payments up to an including the 27th instalment.   Owners eventually accepted Charterers' breaches as a repudiation of the charterparty and terminated the contract on 27th February 2009 as, I hold, they were entitled to do.  There was as at this date hire outstanding in the amount of US$3,517,803.16 (after taking account of bunkers ROB on redelivery/termination) and it was this sum I awarded the Owners under my First Final Award dated 18th May 2009.

2.  Owners now sought damages for their losses suffered by the early termination of the charterparty.   They based this upon the difference between the charterparty rate of $48,000 per day gross, $46,200 net of address commission, and the vessel's actual daily earnings during the period of "underrun" which they calculated, correctly, to be 276.222 days.

3.  Owners' starting point therefore was to take the net daily rate of hire multiplied by the days of underrun: this produced a figure of $12,775,326.67.

4.  Owners then gave credit for earnings under five substitute fixtures as follows to produce
    their net claim of US$7,614,806.34:-

    | (i) | $27,787.50* X 53.60856 Days | = $1,491,648.44 |
    |------|------------------------------|------------------|
    | (ii) | $10,500.00* X 45.711806 Days | = $479,973.96 |
    | (iii) | $19,250* X 126.020833 Days | = $2,425,901.04 |
    | (iv) | $12,271.88* X 23.836806 Days | = $292,522.42 |
    | (v) | $17,251.05 X 27.272222 Days | = $470,474.47 |
    | Total Hire Earned | | = $5,160,520.32 |

    **TOTAL NET LOSS OF HIRE**     **US$7,614,806.34**

    * address commission deducted from the hire

5.  The fixtures were in evidence before me; using the same numbering as above:-

    (i)   C/P 4th March 2009 to Atlantic Hellas Maritime Company Ltd for a time charter
          trip from the US Gulf to Nigeria, in the event at the net daily rate set out above.

    (ii)  C/P 14th April 2009 to Louis Dreyfus Commodities Suisse SA for a time charter
          trip delivery Nigeria, redelivery Skow/Passero, including Algerian ports at a
          gross rate of hire of US$10,500.  It would appear that Charterers have failed to
          deduct address commission of 3.75 per cent from this figure but as any such
          deduction would only increase their claim, I have determined not to adjust this
          figure.

    (iii) C/P 5th June 2009 to Swissmarine Services SA for a time charter trip delivery
          Bejaia with a wide range of redelivery options at a gross rate of hire of $20,000
          daily less 3.75 per cent address commission, thus net $19,250.

(iv)   C/P 8th October 2009 to Oldendorff GmbH for a time charter trip delivery Jingtang in China redelivery one safe port China/Japan at a gross rate of hire $12,750, $12,271.88 net.

(v)   It would seem that for the balance of some 27 days Owners have simply given credit to Charterers for what they say was the then prevailing market rate, gross or net was not clear, having redelivered the vessel to their head (or possibly disponent) owners, Elite Shipmanagement Inc, from whom they had originally chartered the vessel pursuant to a time charter dated 1st August 2007 on an NYPE form. The rate of hire in the copy of the papers before me had been removed but I doubted that it would have any relevance to market rates prevailing in the late autumn of 2009. Whilst there was no evidence before me as to that market rate I had no reason to doubt that it represented a fair assessment, coming as it did from very experienced operators, and if Charterers wanted to argue otherwise they had been given every opportunity to do so: they failed to take it.

6.   On the basis that Owners have properly given credit for the earning of the vessel during the period of the underrun (and I concluded that they had done so) it seemed to me that their claim for damages in the sum of US$7,614,806.34 was well made out and I so find.

7.   I have awarded interest at a commercial rate running from (approximately) the mid point of the period of underrun to balance early and late receipt of hires. Additionally Owners must have their costs.

*Exhibit "4"*

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

Hanjin Shipping Co Ltd

<u>Claimants</u><br/><u>(Owners)</u>

-and-

Glory Wealth Shipping Pte Ltd

<u>Respondents</u><br/><u>(Charterers)</u>

<u>m.v. Tian Zhu Feng</u>

<u>Charterparty 6th September 2007</u>

_____

**FINAL AWARD**

_____

WHEREAS :-

1.  By a time charter dated 6th September 2007 on an amended NYPE 1946 form with added clauses the Claimants ("Owners") chartered the motor vessel Tian Zhu Feng ("the vessel") to the Respondents ("Charterers") from the time of her delivery for a period up to minimum 20th November to a maximum 23rd December 2008 upon terms more particularly set out therein.

2.      The said charterparty further provided, by Clauses 17 and 30, for any disputes between the parties to be referred to arbitration in London in the manner therein specified with English law to apply.   A dispute having arisen, further details of which appear below, having regard to the amount in dispute (less than US$25,000), the President of the London Maritime Arbitrators Association ("LMAA") appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT to be sole arbitrator pursuant to the Small Claims Procedure ("SCP") of the LMAA.   The seat of this arbitration is England.

3.      Owners served claim submissions dated 8th December 2009 on Charterers, claiming US$15,673.01, plus interest and costs, being the sum they said was due to them on the balance of accounts between the parties following redelivery of the vessel.

4.      Pursuant to the SCP, Charterers were required to serve any defence submissions within 28 days but failed to do so.   At the request of Owners' London solicitors Holman Fenwick Willan, on 12th January 2010 I made the following order against Charterers:-

> *"I refer to Holman Fenwick Willan's email of 8th January.  Lacking anything from you I now order service of defence submissions (with full supporting documents please) by close of business London 18th January."*

5.      Again they failed to respond, and on 19th January 2010 I made the following order:-

> *"I was disappointed to note that you have failed to comply with my order dated 12th January.*
>
> *I now order in final and peremptory terms service of defence submissions (with full supporting documentation please) by close of business London time 26th January.  In the event you fail to comply pursuant to Section 41(7) of the Arbitration Act 1996 I will feel free to proceed to my Award based on the materials and submission placed before me by the Claimants to the exclusion of all else."*

6.    Charterers failed to comply. I am satisfied that the claim submissions and the two orders made out above were received by the Charterers. I have determined therefore that it is appropriate that I should proceed pursuant to the said Section 41(7).

7.    The following appeared from the materials in evidence before me. The vessel was delivered into Charterers' service on 19th October 2007 and redelivered on 3rd November 2008, thus a total duration of some 381 days. The hire rate was US$68,000 per day gross, less address commission of 3.75 per cent. Since the earliest contractual redelivery date was 20th November, Charterers were in breach when redelivering when they did and Owners claimed the difference between the charter rate and what they said was the market rate (which they said was only US$6,135.25 per day) for the 16.42013 days of "underrun". Accordingly they debited Charterers for the difference: US$966.977.68. The remaining items in Owners' final statement of account appeared uncontroversial: bunkers, off-hire for drydocking, intermediate hold cleaning, ILOHC additional premium and the like. The resulting balance was the sum Owners claimed in this reference: US$15,673.01.

8.    Also in evidence before me were the parties' exchanges relevant to the above. In their email of 5th November 2008, Charterers agreed Owners" "compensation ppsal" in principle and after some negotiation the figure of US$966,977.68 appears to have been agreed since it appears in Charterers' "Provisional Final Hire Statement" dated 27th March 2009. This showed a balance due to Owners of US$974,764.24, a figure very close to a receipt appearing in Owners' statement "26th – hire USD974,739.24", the difference I suspect accounted for by bank charges.

9.    Analysing where the difference now claimed comes from it appears to be:-

(a) Estimated Owners' expense    US$10,000

(b) Off-hire bunkers    US$5,618

US$15,618

The discrepancy is de minimus and I ignore it. Taking these in turn:-

(a) The vessel was redelivered in November 2008. Charterers should have been able to produce vouchers to support any Owner's expenses by now but have failed to do.

(b) Charterers seem not to have addressed the question of off-hire bunkers either IFO or MDO in contrast to Owners: indeed they have simply left a "blank" for this item in their provisional statement.

10.    I concluded on the basis of the evidence before me that Owners had made out their claim.

A    NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my FINAL AWARD namely:-

B    I FIND AND HOLD that Owners' claims SUCCEED in the sum of US$15,673.01.

C    Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the sum of US$15,673.01 (Fifteen Thousand Six Hundred and Seventy-Three United States Dollars and once cent) together with interest thereon calculated at the rate of 5.25

per cent per annum, compounded with three monthly rests, running from 26th March 2009 until the date payment is made.

D    I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' recoverable costs as limited by the SCP (to be assessed by me if not agreed. for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4.5 per cent per annum compounded with three monthly rests running from the date of this Award until payment. Additionally the Charterers shall pay my costs of £2,000 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E    My Award is FINAL as to all matters herein determined but I expressly RESERVE unto myself jurisdiction to deal with all outstanding matters in the reference.

Given under my hand this 12th day of March 2010

_____
Michael Baker-Harber

_____
Witness

*Exhibit "5"*

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND IN THE MATTER OF AN ARBITRATION</u>

<u>B E T W E E N :-</u>

Hanjin Shipping Co Ltd

<u>Claimants</u><br><u>(Owners)</u>

-and-

Glory Wealth Shipping Pte Ltd

<u>Respondents</u><br><u>(Charterers)</u>

<u>m.v. Isminaki</u>

<u>Charterparty 26th April 2007</u>

---

**FINAL AWARD**

---

WHEREAS :-

1.  By a time charter dated 26th April 2007 on an amended NYPE 1946 form with added clauses the Claimants ("Owners") chartered the motor vessel Isminaki ("the vessel") to the Respondents ("Charterers") from the time of her delivery for a period of minimum 12 months or about 14 months (15 days at Charterers' option) upon terms more particularly set out therein.

2.    The said charterparty further provided, by Clauses 17 and 99, for any disputes between the parties to be referred to arbitration in London in the manner therein specified with English law to apply.  A dispute having arisen, further details of which appear below, having regard to the amount in dispute (less than US$150,000), the President of the London Maritime Arbitrators Association ("LMAA") appointed the undersigned Michael Baker-Harber of 14 Cheyne Gardens, London, SW3 5QT to be sole arbitrator pursuant to the Small Claims Procedure ("SCP") of the LMAA.    The seat of this arbitration is England.

3.    Owners served claim submissions dated 8th December 2009 on Charterers, claiming US$60,420.61, plus interest and costs, being the sum they said was due to them on the balance of accounts between the parties following redelivery of the vessel.

4.    Pursuant to the SCP, Charterers were required to serve any defence submissions within 28 days but failed to do so.  At the request of Owners' London solicitors Holman Fenwick Willan, on 12th January 2010 I made the following order against Charterers:-

> *"I refer to Holman Fenwick Willan's email of 8th January.  Lacking anything from you I now order service of defence submissions (with full supporting documents please) by close of business London 18th January."*

5.    Again they failed to respond, and on 19th January 2010 I made the following order:-

> *"I was disappointed to note that you have failed to comply with my order dated 12th January.*
>
> *I now order **in final and peremptory terms** service of defence submissions (with full supporting documentation please) by close of business London time 26th January.  In the event you fail to comply pursuant to Section 41(7) of the Arbitration Act 1996 I will feel free to proceed to my Award based on the materials and submission placed before me by the Claimants **to the exclusion of all else.**"*

6.    Charterers failed to comply. I am satisfied that the claim submissions and the two orders made out above were received by the Charterers. I have determined therefore that it is appropriate that I should proceed pursuant to the said Section 41(7).

7.    The vessel was duly delivered into Charterers' service on 14th June 2007 and redelivered on 23rd September 2008, thus somewhat later than agreed but no point as to this was apparently taken by Owners. The agreed daily rate of hire was US$43,250, less 3.75 per cent address commission.

8.    Owners' final hire statement ("Invoice"), in the papers before me, appeared on the face of it largely uncontroversial: hire due, hire paid, off-hire for some 30 days for drydocking, bunkers on delivery/redelivery, intermediate hold cleaning ILOHC, items' for Owners' account, items for Charterers' account. Vouchers supporting items for Owners' or Charterers' account were included in the materials before me and, without input from Charterers, I could not fault them. Nor was I given what I assume must have come into being at some stage: namely a "rival" final hire statement produced by Charterers. Charterers have chosen not to participate in these proceedings and have only themselves to blame if they have valid objections to the make-up of Owners' Invoice but fail to explain to me what they are. It may be that they have no objections but simply decline or are unable to pay.

9.    Focus on the DR and CR columns of Owners' Invoice produces the following:-

Total Dr. US$20,656,737.25 (correctly calculated)

Total Cr. US$20,596,616.30 (more or less correctly calculated)

This shows a balance due to Owners of, I calculate, US$60,120.95. The last section of the invoice is in my view incorrectly stated: it is wrong to add the US$60,120 (odd) to the DR figure of US$20,656,737.25 to produce a total of US$20,716,857.86: the DR and CR columns should balance (according to the way I was taught) so that the US$60,120 should appear in the CR column albeit labelled "Balance amount due to Hanjin". However, no matter: I concluded that there was indeed no less than US$60,120.61 due from Charterers to Owners

A     NOW I the said Michael Baker-Harber having taken upon myself the burden of this reference as sole arbitrator, having carefully and conscientiously considered the evidence and submissions before me DO HEREBY MAKE ISSUE AND PUBLISH this my FINAL AWARD namely:-

B     I FIND AND HOLD that Owners' claims SUCCEED in the sum of US$60,120.61.

C     Accordingly I AWARD AND ADJUDGE that Charterers do forthwith PAY to Owners the sum of US$60,120.61 (Sixty Thousand One Hundred and Twenty United States Dollars and sixty-one cents) together with interest thereon calculated at the rate of 5.25 per cent per annum, compounded with three monthly rests, running from 26th March 2009 until the date payment is made.

D     I FURTHER AWARD AND ADJUDGE that Charterers shall bear their own and PAY Owners' recoverable costs as limited by the SCP (to be assessed by me if not agreed, for which purpose I reserve jurisdiction) together with interest thereon calculated at the rate of 4.5 per cent per annum compounded with three monthly rests running from the date of

this Award until payment. Additionally the Charterers shall pay my costs of £2,000 provided always that if the Owners shall in the first instance have paid all or any part of my said costs they shall be entitled to prompt reimbursement of any sum so paid together with interest thereon calculated as above but running from the date of payment until the date of reimbursement.

E       My Award is FINAL as to all matters herein determined but I expressly RESERVE unto myself jurisdiction to deal with all outstanding matters in the reference.

Given under my hand this 12th day of March 2010

_____          _____
    Michael Baker-Harber                          Witness